# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

**June 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* C.W.

**No. 19-0936** (Randolph County 18-JA-159)

## MEMORANDUM DECISION

Petitioner Father J.W., by counsel J. Brent Easton, appeals the Circuit Court of Randolph County's September 11, 2019, order terminating his parental rights to C.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Melissa T. Roman, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without first granting him an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2018, the DHHR filed a child abuse and neglect petition against the mother and her boyfriend, alleging that they abused drugs in the home.[2] Specifically, the DHHR

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Initially, the mother's boyfriend was listed as the father of C.W. in the petition. However, subsequent to the filing of the petition, the parties admitted that petitioner was C.W.'s father and that he and the mother were previously in a relationship. At the time of the petition's filing, the mother was in a relationship with her boyfriend, petitioner's brother. No allegations

(continued . . .)

1

alleged that it received a referral wherein the reporter claimed that the mother abused drugs, slurred her words, stumbled, rambled, and made no sense when she spoke. A Child Protective Services ("CPS") worker interviewed A.S., the step-sibling of C.W., who disclosed that the mother "sleeps a lot" and "take[s] pills." A.S. also disclosed observing petitioner "hit her mom, yell in her face, and say bad words to her."

The DHHR filed an amended petition in February of 2019, adding petitioner to the proceedings after paternity testing revealed that he was C.W.'s father. The DHHR also alleged that, during a forensic interview, A.S. made additional disclosures of drug abuse in the home and reported having observed petitioner hit her mother on one occasion. The DHHR concluded that petitioner exposed the children to domestic violence, failed to provide adequate supervision, and failed to protect his child from the abusive and neglectful circumstances that were ongoing in the home.

At an adjudicatory hearing held in May of 2019, petitioner stipulated to periodically abusing controlled substances and engaging in verbal altercations with the mother. The circuit court accepted petitioner's stipulation and adjudicated him as an abusing parent. The circuit court ordered petitioner to submit to a drug screen, and petitioner tested positive for opiates. Petitioner moved the circuit court for a post-adjudicatory improvement period, but the motion was not ruled upon at that time. In July of 2019, the guardian filed a report indicating that petitioner failed to consistently submit to drug screens. The guardian opined that despite petitioner's severe drug addiction, he had done nothing to address the same. The guardian recommended termination of petitioner's parental rights.

In August of 2019, the circuit court held a dispositional hearing. The DHHR presented the testimony of a DHHR worker who testified that petitioner failed to call-in fifteen times during February of 2019 to ascertain whether he needed to submit to drug screening and only submitted to three drug screens during that month. Petitioner called in only twice during March of 2019 and missed six screens. Petitioner failed to call in or submit to any screens in April of 2019. A Community Corrections worker reported that petitioner inconsistently submitted to screens, tested positive for opiates in May of 2019, and thereafter completely ceased submitting to screens. Petitioner testified that he worked at a restaurant and in construction. According to petitioner, he periodically took Hydrocodone to treat aches and pains associated with his physical labor, but claimed that he was not addicted to the substance.[3] Petitioner also testified that he maintained housing and was in the process of acquiring a bigger residence to accommodate the child. Petitioner stated that he would participate in any classes or programs required by the DHHR if he were granted an improvement period. Despite testimony of the numerous missed drug screens, petitioner claimed that he fully participated in submitting to drug screens at the

_____

were made against petitioner in the initial petition. Additionally, the mother's older child, A.S., is not petitioner's child and is not at issue on appeal.

[3]Petitioner failed to provide any prescriptions for Hydrocodone or other opiates during the proceedings below.

beginning of the case. Petitioner also stated that the DHHR did not properly investigate "who [he] was as a person" and that he felt like he had been "railroaded." Further, when asked what issues he needed to improve upon, petitioner testified, "[h]onestly, I don't know. If you guys can advise me on something that would improve my parenting, please do."

Ultimately, the circuit court denied petitioner's motion for a post-adjudicatory improvement period. The circuit court found that petitioner "had nine months to demonstrate that [he] will participate in an improvement period and [he] can't even comply with [the] court's order to walk across the street after hearings and screen." The circuit court also found that the DHHR provided petitioner with several opportunities, but he rejected those opportunities and blamed the DHHR for his failures. The circuit court found that petitioner was presently unwilling or unable to adequately provide for the child's needs. Further, the circuit court determined that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of his parental rights was necessary for the child's welfare. Petitioner appeals the circuit court's September 11, 2019, dispositional order terminating his parental rights.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioner argues that the circuit court erred in terminating his parental rights without first granting him a post-adjudicatory improvement period. Petitioner contends that his testimony indicated that he was likely to fully participate in an improvement period because he demonstrated that he maintained housing and employment and confirmed that he would participate in any services offered. Petitioner further contends that he submitted seventeen

---

[4]The mother's parental rights were also terminated below. The permanency plan for the child is adoption by A.S.'s relative.

negative drug screens throughout the proceedings. According to petitioner, the circuit court abused its discretion in denying petitioner's motion for an improvement period and in terminating his parental rights. We disagree.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements[.]"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Having reviewed the record, we find that the circuit court did not err in denying petitioner's request for an improvement period. The overwhelming evidence set forth below demonstrates that petitioner failed to consistently submit to drug screens. While petitioner claims he produced seventeen negative screens, testimony at the dispositional hearing indicated that he missed numerous screens. In fact, petitioner missed three screens in February of 2019, six screens in March of 2019, eight screens in April of 2019, seven screens in May of 2019, six screens in June of 2019, and seven screens in July of 2019. Petitioner did not attempt to call in to ascertain whether he needed to submit to a drug screen after May of 2019. Petitioner also tested positive for opiates in May of 2019 and at the dispositional hearing. Moreover, petitioner blamed the DHHR for his lack of participation, claimed they "railroaded" him, and opined that he did not know what he needed to improve upon as a parent. We have previously held that failure to acknowledge the issues of abuse and neglect render an improvement period an "exercise in futility." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Based on petitioner's failure to comply with drug screens and accept responsibility for his actions, we find no error in the circuit court's denial of his motion for an improvement period.

The evidence as set forth above also demonstrates that the circuit court did not err in terminating petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) (2019)[5] provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c) (2019) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

---

[5]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

Here, the evidence demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of neglect in the near future. As shown above, petitioner failed to participate in court-ordered drug screens, tested positive for opiates during the proceedings, and blamed the DHHR for his failure to participate. Petitioner could not articulate what issues he needed to address to improve his parenting. Based on the foregoing, it is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect and that termination was necessary for the child's welfare. While petitioner claims he should have been granted an improvement period prior to the termination of his parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Petitioner failed to comply with the circuit court's orders below and failed to acknowledge the extent of his actions as of the dispositional hearing. Accordingly, the circuit court's findings are fully supported by the record below, and we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 11, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 24, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison